# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**JOSEPH E. KMATZ, et al.,**

           **Plaintiffs,**

-vs-                                            **Case No.  1-:04-CV-436**

**METROPOLITAN LIFE INSURANCE CO,**
**et al.,**

                                            **Judge Thomas M. Rose**

           **Defendants.**

_____

### ENTRY AND ORDER GRANTING DEFENDANTS METLIFE, ABX AND AIRBORNE'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. #42); OVERRULING KMATZ'S ESTATE'S MOTION FOR SUMMARY JUDGMENT (Doc. #43); GRANTING GAINES'S MOTION FOR SUMMARY JUDGMENT (Doc. #34) AND TERMINATING THE CASE

_____

This action arises from the alleged improper payment of life and accidental death insurance benefits (the "Proceeds") to Defendant Jennifer Gaines ("Gaines") by Defendant Metropolitan Life Insurance Company ("MetLife"). The Proceeds were paid on a policy (the "Policy") insuring the life and accidental death of Joseph M. Kmatz ("Kmatz"). Kmatz died accidentally and the Proceeds were paid pursuant to an employee benefit plan (the "Plan") sponsored by Defendant ABX Air, Inc. ("ABX"), Kmatz's employer at the time of his death, and by Airborne Freight Corporation ("Airborne").

The First Amended Complaint ("FAC") that is now before the Court was brought in the name of Joseph M. Kmatz's Estate (the "Estate") by Plaintiffs Joseph E. Kmatz and Connie A.

Kmatz who are the parents of the Decedent. Joseph E. Kmatz is the duly appointed administrator of Kmatz's estate.

The FAC includes five causes of action. The First Cause of Action is against ABX, Airborne and MetLife for breach of fiduciary duty pursuant to 28 U.S.C. §§ 1004 and 1105. The Second Cause of Action is against MetLife for breach of contract and the Third Cause of Action is also against MetLife for payment of insurance proceeds in contravention of Ohio law. Plaintiffs' Fourth Cause of Action is against Gaines for conversion and the Fifth Cause of Action is against Gaines for unjust enrichment.

ABX, Airborne and MetLife initially moved to dismiss the First, Second and Third Causes of action which are against only them. This motion was GRANTED in part and OVERRULED in part. The Court determined that Plaintiffs' First and Second Causes of Action are preempted by ERISA and will be adjudicated as one ERISA claim. The Third Cause of Action was dismissed.

Gaines also initially moved to dismiss the Fourth and Fifth Causes of Action which are against only her. This Motion was OVERRULED on the basis that these two claims are not preempted by ERISA.

Now before the Court are ABX, Airborne and MetLife's Motion for Judgement On the Administrative Record (doc. #42), the Estate's Motion for Summary Judgment[1] (doc. #43) and Gaines's Motion For Summary Judgment (doc. #34). These Motions are now fully briefed and

---

[1]The Estate filed a Motion for Summary Judgment presumably because it wants the Court to consider evidence that is not in the Stipulated Administrative Record. However, the Court has not been presented with and does not have a legal reason to consider evidence that is not in the administrative record to resolve the issues before it.

ripe for decision. A factual background will first be set forth followed by an analysis of the

Motions.

## I. RELEVANT FACTUAL BACKGROUND

Kmatz was employed with ABX and enrolled in the Plan. (Stipulated Administrative

Record ("SAR") 3.) The Plan provided health insurance, a 401k plan, and life insurance and

accidental death insurance. (Id.)

## A. Relevant Terms of the Plan and the Policy

Life and accidental death benefits provided pursuant to the Plan are insured by and paid

by MetLife. (Id. 12, 14.) MetLife is also authorized by the Plan to make claim determinations.

(Id. 12, 14, 19.)

The Plan provides that the Plan Administrator, who is identified as Airborne, the Claims

Administrator, who is identified as MetLife, the insurance companies and other Plan fiduciaries

"shall have full and absolute discretionary authority to administer and interpret the terms of the

Plan and to determine eligibility for and entitlement to Plan benefits." (Id. 14, 19.) Further,

"benefits are paid only if the Plan Administrator, or its delegate, decides in its discretion that the

applicant is entitled to them." (Id.)

The Summary Plan Description provides that, in the event of the death of a plan

participant, the participant's life insurance benefits will be paid to the participant's beneficiary.

(Id. 3.) The participant's beneficiary is "the person or persons you name to receive your Life

Insurance benefit in the event of your death." (Id. 4.) Plan participants are advised to complete

the beneficiary section of their Group Insurance Enrollment form and return the form to the

Benefits section of Human Resources. (Id.) Finally, the Summary Plan description indicates that

a plan participant may change "your" benefit designation at any time. (Id.)

Procedures for filing a claim for life and accidental death benefits are provided in the

Summary Plan Description. (Id. 6.) To file such a claim, a claim form is to be completed and

returned to Human Resources. (Id.)

**B. Procedural History**

Kmatz married Gaines on November 13, 1999. (Id. 54.) On November 22, 1999, the

Decedent signed an ABX 1999 Group Insurance Enrollment/Change form naming Jennifer

Gaines, a.k.a. Jennifer Kmatz, as the beneficiary of the Policy. (Id. 52-53.) Gaines was also

enrolled by Kmatz for dependent medical insurance. (Id. 52.)

The couple dissolved their marriage on July 27, 2000. (Id. 28-30.) A Separation

Agreement, executed on June 17, 2000, was incorporated into the Decision and Entry granting

dissolution of the marriage. (Id. 31-37.) The Separation Agreement indicates that it is a "full and

complete settlement of all spousal support and property rights between the parties… including

rights of dower, inheritance, descent and distributions, allowance for year's support, exemption

from administration, all rights as surviving spouse, heir, legatee, and next of kin the estate of the

other, and all rights to administer the estate of the other, and in all property which each now

owns or may hereafter acquire, except as herein provided." (Id.) The Separation Agreement,

however, contains no language or mention of the Policy and does not allocate ownership and

control of the Policy following the termination of the marriage. (Id.) The Separation Agreement

also does not name or provide for any alternate payees of the Policy Proceeds. (Id.)

In August 2000, following dissolution of his marriage from Gaines, Kmatz executed a "2000 Group Insurance Enrollment/Change Form." (Id. 64-65.) Using this form, Kmatz cancelled Gaines's dependant medical insurance coverage. (Id. 64.) Kmatz, however, made no change to the beneficiary of his life and accidental death insurance. (Id. 65.) This portion of the Enrollment/Change Form was left blank. (Id.)

Kmatz died intestate on August 24, 2003. (FAC ¶ 4; SAR 57.) As a result of Kmatz's death, $64,000 in group life insurance and $64,000 in accidental death benefits became payable to Kmatz's beneficiary. (SAR 59.)

On August 30, 2003, Gaines completed a "Beneficiary's Life Insurance Claim Statement" asserting a claim for Kmatz's life and accidental death benefits. (Id. 39.) Julia Ake, an ABX Benefits Coordinator, forwarded Gaines's claim to MetLife, the claims administrator. (Id. 38.) In a cover letter, dated October 27, 2003, and used to transmit the claim and associated documents, Ake advised MetLife that the latest beneficiary listed for Kmatz was ex-wife, Jennifer Kmatz (Gaines). (Id.) Ake further advised MetLife that Kmatz "dropped his ex-wife from his insurance, however he did not change his beneficiary." (Id.) On November 7, 2003, MetLife approved Gaines's claim and issued payment of the life and accidental death benefits in the amount of $128,000 plus interest (the "Proceeds") to her. (Id. at 59.)

Soon thereafter, MetLife received a letter dated December 3, 2003, from an attorney representing Kmatz's parents regarding payment of the Proceeds to Gaines. (Id. 28.) The letter referred to Ohio law providing that, if a spouse obtains a divorce or dissolution ending his or her marriage, any designation of the ex-spouse as beneficiary under a life insurance policy is revoked as a result of the divorce or dissolution. (Id.) The letter further indicated that there is no

language to the contrary in the Decree of Dissolution and that Kmatz's parents have the "sole right" to receive the life and accidental death proceeds. (Id.)

MetLife responded with a letter dated December 11, 2003 which advised the counsel for Kmatz's parents that the Plan was governed by ERISA and that MetLife was required to administer claims in accordance with the documents and instruments governing the Plan. (Id. 23-24.) The letter further advised that the Ohio statute cited by counsel for Kmatz's parents was preempted by ERISA and that MetLife was obligated by the terms of the Plan to pay the life and accidental death benefits to Gaines. (Id.) The Estate subsequently initiated this lawsuit.

In their Memorandum Contra Gaines's Mot. Summ. J. and in their Motion for Summary Judgment, the Estate presents several pages of alleged facts that they say show that Kmatz substantially complied with the requirements to remove Gaines as the beneficiary of the Policy. However, these alleged facts are not set forth herein because, as will be addressed later, they are not a part of the Administrative Record and are also irrelevant to the matters to be decided. The Estate's Motion for Summary Judgment and ABX, Airborne and MetLife's Motion for Judgment On the Administrative Record will first be addressed followed by Gaines's Motion for Summary Judgment.

## II. THE ESTATE'S MOTION FOR SUMMARY JUDGMENT AND ABX, AIRBORNE AND METLIFE'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

ABX, Airborne and MetLife argue that their decision to pay the Proceeds to Gaines should be upheld because it was in accordance with the Plan's terms and provisions and the beneficiary designation on file. The Estate argues that the entire value of the Proceeds should be paid to it. As a basis for this argument, the Estate identifies six claims.

The Estate's first claim is that it is entitled to the Proceeds pursuant to the terms of the Plan and to ERISA, 29 U.S.C. §1132(a)(1)(B). The Estate's second claim is that Defendants ABX and MetLife violated their ERISA fiduciary duties as set forth in 29 U.S.C. § 1104 when they failed to provide the proceeds of the Policy to the Estate after Kmatz substantially complied with all acts necessary to remove Gaines as the beneficiary of the Policy. The Estate's third claim is that ABX, Airborne and MetLife violated their fiduciary duties when they failed to gather information as required by law. The Estate's fourth claim is that Airborne, one of the Defendants, violated its fiduciary duties when it failed to complete the beneficiary change forms for Kmatz. Finally, the Estate's fifth claim is that ABX, Airborne and MetLife failed to comply with ERISA's notice and procedural requirements as set forth in 29 U.S.C. §1133.

**A. The Estate's Claims Are Addressed Under the ERISA**

As previously determined, the claims brought by the Estate are brought pursuant to ERISA. ERISA provides a wide range of remedies for participants and beneficiaries of employee benefit plans. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). However, ERISA distinguishes between parties who may bring a claim and the type of relief available to them. *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481 (6th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002).

Specific provisions for the civil enforcement of ERISA by certain specified parties are found in section 1132. 29 U.S.C. §1132. Relevant to the matters now before the Court, Section 1132(a)(1) provides that a civil action may be brought by a participant or beneficiary to recover benefits. Section 1132(a)(2) provides that a civil action may be brought by a participant or beneficiary pursuant to the breach-of-fiduciary liability set forth in Section 1109. Finally,

Section 1132(a)(3)[2] provides that a civil action may be brought by a participant or beneficiary to enjoin acts or practices that violate ERISA or to obtain other appropriate equitable relief. Having set forth an overview of ERISA and its provisions for civil enforcement, each of the Estate's claims will be analyzed seriatim.

## B. Entitlement To Proceeds

The Estate's first claim that it is entitled to the Proceeds of the Policy is an ERISA claim for benefits brought pursuant to 29 U.S.C. §1132(a)(1)(B).[3] A participant or beneficiary of an ERISA qualified plan may bring suit in federal court to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

## 1. Standard of Review

When an ERISA plan administrator's decision to deny *benefits* is brought before a court, the court engages in a de novo review of the decision unless the benefit plan gives the plan administrator discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone*, 489 U.S. at 115. Where the plan administrator is given no discretionary authority by the plan, review by the court is de novo with respect to both the factual determinations as well as the legal conclusions of the plan administrator. *Id.* Where there is a clear grant of discretion, the court applies an arbitrary and capricious standard of review to the administrator's decision to

---

[2] Section 1132(a)(3) operates as a safety net offering appropriate equitable relief for injuries, such as breaches of fiduciary duties, that ERISA does not elsewhere adequately remedy. *Varity Corporation v. Howe*, 516 U.S. 489, 512 (1996).

[3] The Court has previously determined that the Estate's First Cause of Action is an ERISA claim brought pursuant to 29 U.S.C. §1132(a)(1)(B) and not pursuant to 29 U.S.C. §1132(a)(3).

deny benefits. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).

The Sixth Circuit does not require a plan to use any magic words such as "discretionary" to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, n.2 (6th Cir. 1992). Yet the Sixth Circuit has consistently required "a clear grant of discretion [to the administrator]" before replacing its duty to engage in de novo review with the arbitrary and capricious standard. *Wulf*, 26 F.3d at 1373.

In this case, it is undisputed that Airborne, the Plan Administrator, and MetLife, the relevant Claims Administrator, are given discretionary authority to administer the Policy. Therefore, the arbitrary and capricious standard will be applied to their decisions.

When applying the arbitrary and capricious standard, a court is to decide if the plan administrator's decision was rational in light of the plan's provisions. *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988)). A decision is not arbitrary and capricious if it is based upon a reasonable interpretation of the plan. *Johnson*, 970 F.2d at 1574.

In addition, when applying the arbitrary and capricious standard, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome …." *Davis By and Through Farmers Bank and Capital Trust Company of Frankfort, Kentucky v. Kentucky Finance Companies' Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990). Therefore, the administrator's decision must be supported by evidence. *Killian v. Healthsource Provident Administrators, Inc.*,

152 F.3d 514, 520 (6th Cir. 1998). In sum, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence and if it is based upon a reasonable interpretation of the plan. *See id.* at 520 (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Absent a procedural challenge to the administrator's decision, the court's review is limited to the administrative record of the benefit determination. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998). Further, while reviewing the administrative record, the Court may not consider a post hoc explanation of an administrative body's decision. *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839,  n.7 (6th Cir. 2000). Administrators and their attorneys are not permitted to "shore up" a decision after-the-fact by testifying as to the "true" basis for the decision after the matter is in litigation. *Id.*

## 2. Analysis of Entitlement Claim

The Estate argues that it is entitled to the Proceeds because Kmatz substantially complied with all acts necessary to remove Gaines as the beneficiary of the Policy. It is in support of this argument that the Estate presents several pages of alleged facts regarding Kmatz's substantial compliance with the requirements to change the beneficiary from Gaines to Joseph E. Kmatz, Kmatz's father.

However, the alleged facts presented by the Estate regarding substantial compliance are irrelevant. Unlike the Fourth, Seventh and Eighth Circuits cited by the Estate for support, the Sixth Circuit has specifically rejected the Federal common law "substantial compliance" test and has consistently and repeatedly held that the determination as to who is the proper beneficiary of an ERISA-governed plan is based upon the plan documents. *Unicare Life & Health Insurance*

*Co. v. Craig*, 157 Fed.Appx. 787, 791 (6th Cir. Sept. 22, 2005); *Hendon v. E.I. Dupont De Mours and Co.*, 145 F.3d 1331, 1998 WL 199824 at **6 (6th Cir. 1998), *cert. denied*, 525 U.S. 1012 (1998); *Metropolitan Life Insurance Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996), *cert. denied*, 520 U.S. 1263 (1997); *contra, Aetna Life Insurance Co. v. Weatherford*, 924 F.2d 1057 (6th Cir. 1991).[4]

The Plan documents, particularly the Summary Plan Description, provide that Kmatz's life insurance benefits are to be paid to Kmatz's beneficiary. The beneficiary designation form that was on file when Kmatz died indicates that Gaines was his beneficiary. It was to Gaines that MetLife paid the Policy Proceeds. Therefore, Airborne and MetLife's decision to provide the Policy benefits to Gaines was not arbitrary and capricious. This decision relied upon a reasonable interpretation of the Plan and the evidence and was the result of a deliberate principled reasoning process. The analysis next turns to the Estate's second claim.

**C. Breach of Fiduciary Duties for Failure to Provide Policy Proceeds To the Estate**

The Estate's second claim is that Defendants Airborne and MetLife violated their ERISA fiduciary duties as set forth in 29 U.S.C. § 1104 when they failed to provide the Policy Proceeds to the Estate after Kmatz substantially complied with all acts necessary to remove Gaines as the beneficiary of the Policy. However, breach of fiduciary claims that are actually unexhausted individual-benefit claims are to be treated as benefit claims pursuant to 29 U.S.C. §1132(a)(1)(B) and not breach of fiduciary claims pursuant to 29 U.S.C. §1104 and 1105. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 717-18 (6th Cir. 2005)(citing *Wilkins*, 150 F.3d at 616; *Weiner v Klais and Co., Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997)). Said another way, the Sixth

---

[4]This case relies upon pre-ERISA state laws and predates *Unicare*, *Hendon* and *Pressley*.

Circuit has concluded that a civil action for breach of fiduciary duty pursuant to section 1104 cannot be brought under section 1132(a)(3) where section 1132(a)(1)(B) will work. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 (6th Cir. 2003).

In this case, the Estate's claim for the Policy proceeds due to a breach of fiduciary duties is an unexhausted individual-benefit claim. Also, this claim can and has been brought under section 1132(a)(1)(B).

Therefore, the Estate's second claim that Defendants Airborne and MetLife violated their ERISA fiduciary duties as set forth in 29 U.S.C. § 1104 when they failed to provide the Policy Proceeds to the Estate after Kmatz substantially complied with all acts necessary to remove Gaines as the beneficiary of the Policy is actually a claim to be decided as if it were an individual-benefit claim pursuant to section 1132(a)(1)(B). This becomes, then, the same claim as was decided above. As decided above, Airborne and MetLife's decision to provide the Policy benefits to Gaines was not arbitrary and capricious.

The analysis next turns to the Estate's third and fourth claims. These are analyzed together because they are both claims for breach of fiduciary duty and are not, as was above, individual-benefit claims.

**D. Breach of Fiduciary Duties**

The Estate's third and fourth claims are that ABX, Airborne and MetLife violated their fiduciary duties when they failed to gather information as required by law and failed to complete the beneficiary change forms for Kmatz. ERISA fiduciary duties, to whom they are owed, liabilities for breach thereof and available damages will first be set forth followed by an analysis of the Estate's breach-of-fiduciary-duty claims.

**1. ERISA Fiduciary Duties**

The Estate argues that the Defendants breached the fiduciary duties set forth in the

ERISA, 29 U.S.C. §1104. The relevant portion of 29 U.S.C. §1104 sets forth the following

fiduciary duties:

 (a) Prudent man standard of care

   (1) Subject to sections 1103(c) and (d), and 1344 of this title, a fiduciary shall discharge his
   duties with respect to a plan solely in the interest of the participants and beneficiaries and--

     (A) for the exclusive purposes of:
         (I) providing benefits to participants and their beneficiaries; and
         (ii) defraying reasonable expenses of administering the plan;

     (B) with the care, skill, prudence, and diligence under the circumstances then prevailing
     that a prudent man acting in a like capacity and familiar with such matters would use in
     the conduct of an enterprise of a like character and with like aims;

     (C) by diversifying the investments of the plan so as to minimize the risk of large losses,
     unless under the circumstances it is clearly prudent not to do so; and

     (D) in accordance with the documents and instruments governing the plan insofar as such
     documents and instruments are consistent with the provisions of this subchapter and
     subchapter III of this chapter.

**2. To Whom ERISA Fiduciary Duties Are Owed**

ERISA's fiduciary duties are owned to "participants" in employee benefit plans.

*Flanigan v. General Electric Co.*, 242 F.3d 78, 85 (2d Cir. 2001). A "participant" is defined as:

"any employee or former employee of an employer… who is or may become eligible to receive a

benefit of any type from an employee benefit plan which covers employees of such employer."

29 U.S.C. §1002(7). Further, participants are only those "employees in, or reasonably expected

to be in, currently covered employment…" or former employees who "have a reasonable

expectation of returning to covered employment" or "have a colorable claim to vested benefits."

*Firestone*, 489 U.S. at 117. Finally, "participant" does not include a person who claims to be, but is not, entitled to a plan benefit. *Id.*

### 3. Liability for Breach of Fiduciary Duty

ERISA establishes liability for a breach of a fiduciary duty. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 139 (1985). Specifically, ERISA provides that:

> (a) any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary…

29 U.S.C. §1109.

### 4. Available Damages

Civil actions may be brought by the Estate for a variety of claims, including a claim of a breach of fiduciary duty, under either section 1132(a)(1),  section 1132(a)(2) or section 1132(a)(3). It is unclear which part of the statute the Estate has chosen. However, the Estate's claims for benefits brought under section 1132(a)(1)[5] have been addressed above. Therefore, the Court will assume that the Estate's breach-of-fiduciary claims are brought under either section 1132(a)(2) or section 1132(a)(3).

Regarding damages, recovery pursuant to Section 1132(a)(2) inures to the benefit of the plan as a whole and not to an individual beneficiary.  *Massachusetts Mutual*, 473 U.S. at140.

---

[5]Section 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims. *Varity*, 516 U.S. at 512.

Also, Section 1132(a)(3) restricts plan beneficiaries to equitable relief with no recourse to money damages. *Helfrich*, 267 F.3d at 481.

### 5. Analysis of Breach-of-Fiduciary-Duty Claims

The Estate is not entitled to damages for alleged breaches of fiduciary duties for two reasons. First, the Estate does not satisfy the definition of a plan participant to whom fiduciary duties are owed. The Estate is not an employee or former employee but is a person who claims to be, but is not, entitled to a plan benefit.

Second, the Estate may not obtain the monetary damages that it seeks for a breach of fiduciary duty. Damages for a breach of fiduciary duties sought under section 1132(a)(2) inure to the benefit of the plan as a whole and not to an individual beneficiary and damages for a breach of fiduciary duties sought under section 1132(a)(3) may not be monetary damages.

The Estate specifically argues that Airborne violated its fiduciary duty when it failed to complete the beneficiary claim forms for Kmatz. However, plan administrators are required to follow plan documents regarding, among other issues, the designation of beneficiaries, *Unicare*, 157 Fed.Appx. at 788, except for beneficiary designations that are forged, the result of undue influence or otherwise improperly procured. *Tinsley v. General Motors Corp.*, 227 F.3d 700, (6th Cir. 2000). Since the Estate has identified no evidence that Kmatz's designation of Gaines as his beneficiary was forged, the result of undue influence or otherwise improperly procured, Airborne was required to follow the Plan documents and provide the benefits of Kmatz's life and accidental death Policy to Gaines and did not breach its fiduciary duty in doing so. The analysis turns next to the Estate's fifth claim.

**E. Failure To Comply With Notice and Procedural Requirements**

   The Estate's fifth claim is that ABX, Airborne and MetLife failed to comply with ERISA's notice and procedural requirements as set forth in 29 U.S.C. §1133. A summary of the law regarding section 1133 will first be set forth followed by an analysis of this claim.

**1. Section 1133**

   Section 1133 of ERISA, entitled "Claims procedure,"  "requires a plan to provide participants with adequate notice of the reasons for denying benefits to and to afford a reasonable opportunity for a full and fair review." *McCartha v. National City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). The adequate notice is owed to any participant or beneficiary whose claim for benefits has been denied. *Coreno v. Baker Material Handling Corp. Pension Plan*, 210 F.3d 371, 2000 WL 377374 at *5 (6th Cir. 2000). Finally, the notice must be in writing and must set forth the specific reasons for denial and afford a reasonable opportunity to a participant for a full and fair review. *Id.*

   Regarding an opportunity for a full and fair review, a claim procedure is considered reasonable if the plan has established a procedure for filing claims, a written notification procedure for denial of claims and an appeal procedure for denied claims. *Marks*, 342 F.3d at 459. Also, the aforementioned procedures must be described in the Summary Plan Description and  must not contain any provision and not be administered in a way that unduly inhibits the initiation or processing of plan claim. *Id.* Finally, the plan must provide a procedure for informing participants in a timely fashion of the time periods for decisions on claims and for appeals. *Id.* at 459-60.

The Sixth Circuit has adopted a "substantial compliance" test for deciding whether notice and procedural requirements have been satisfied. *McCartha*, 419 F.3d at 444. When deciding whether there is substantial compliance, all communications between an administrator and plan participant are considered. *Marks*, 342 F.3d at 460.

The remedy for failure to comply with section 1133 ordinarily is to reverse the denial of benefits and remand the matter to the plan administrators. *Marks*, 342 F.3d at 461. However, a failure to comply with section 1133 requirements does not require a substantive remedy when remand would be futile. *McCartha*, 419 F.3d at 447. Remand would be futile, for example, when a reasonable basis was provided for denying benefits. *Id.* at 491.

**2. Analysis of Failure-To-Comply-With-Notice-and-Procedural-Requirements Claim**

In this case, the Estate is not entitled to damages for failure to provide adequate notice and a "full and fair" review because the Estate was not a plan participant or beneficiary whose claim for benefits has been denied.

The Estate now argues that it did not receive a full and fair review. This argument is based upon conversations that Joseph E. Kmatz had with Airborne's Benefits Coordinator and with a MetLife representative. However, Joseph E. Kmatz did not follow the Plan's claim procedure. Therefore, the Estate is not entitled to full and fair review because the claim procedure, as set forth in the Summary Plan Description, is reasonable and the Estate did not follow this procedure and make a claim for the Proceeds.

Finally, even if the Estate were to prove that ABX, Airborne and MetLife violated section 1133, the remedy would be futile, and, therefore, not imposed. The remedy for a failure to comply with section 1133 is to reverse the denial of benefits and remand the matter. However,

because, as determined above, ABX, Airborne and MetLife's decision to provide the Policy Proceeds to Gaines was not arbitrary or capricious, remand would be futile.

**F. Conclusion**

The Estate's first claim is an ERISA claim that it should have received the Policy Proceeds. However, Airborne and MetLife's decision to provide the Policy benefits to Gaines was not arbitrary and capricious. Therefore, the Estate is not entitled to the benefits of the Policy pursuant to 29 U.S.C. §1132(a)(1)(B).

The Estate's second claim is that Defendants ABX Air and MetLife violated their ERISA fiduciary duties as set forth in 29 U.S.C. § 1104 when they failed to provide the proceeds of the Policy to the Estate. However, this claim is to be addressed under section 1132(a)(1)(B) and, as determined hereinbefore, the Estate is not entitled to benefits pursuant to section 1132(a)(1)(B).

The Estate is not entitled to relief on its claims that ABX, Airborne and MetLife violated their fiduciary duties when they failed to gather information as required by law and failed to complete the beneficiary change forms for Kmatz. The Estate is not entitled to relief because it does not satisfy the definition of a plan participant to whom fiduciary duties are owed and because it may not obtain the monetary damages that it seeks for a breach of fiduciary duty.

Finally, the Estate is not entitled to damages for ABX, Airborne and MetLife's failure to comply with ERISA's notice and procedural requirements. The Estate is not entitled to damages for this claim because the Estate was not a plan participant or beneficiary and is, therefore, not entitled to ERISA's notice and procedural requirements. Also, the Estate is not entitled to a full and fair review because it did not make a claim in accordance with the Plan documents. Finally,

if the Estate were to prove a violation of section 1133, remand would be futile and thus not imposed.

The analysis now turns to Gaines's Motion for Summary Judgment. The standard of review for motions for summary judgment will first be set forth followed by an analysis of Gaines's Motion.

## III. GAINES'S MOTION FOR SUMMARY JUDGMENT

In this case, the Estate has brought two claims under Ohio law against Gaines and Gaines has moved for summary judgment on each of them. The standard of review for motions for summary judgment will first be set forth followed by an analysis of each of the Estate's claims.

### A. Standard of Review

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support

the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Gaines's Motion for Summary Judgment involves claims brought by the Estate pursuant to Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the state." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).  Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). The analysis now turns to the Estate's first claim against Gaines.

**B. Analysis of the Estate's Conversion Claim**

The Estate's Fourth Cause of Action is against Gaines for conversion. Specifically, the Estate alleges that it is entitled to the Proceeds from the Policy and that Gaines has taken and converted the Proceeds to her own personal use.

Conversion is defined as "a wrongful exercise of dominion over property in exclusion of the right of the owner," or withholding property from the owner's possession under a claim

-21-

inconsistent with the owner's rights. *ATD Corp. V. DaimlerChrysler Corp.*, 261 F.Supp.2d 887,

897 (E.D.Mich. 2003)(citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454

(1976), *reversed on other grounds*, 433 U.S. 562 (1977)). In Ohio, the elements of a conversion

cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of

the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's

property rights; and (3) damages. *Id.* at 898 (quoting 18 American Jurisprudence 2d (1985) 146-

47, Conversion Section 2).

      As background, it is undisputed that, at the time of Decedent's death, Gaines was the

named beneficiary to the Policy as indicated by the completed beneficiary form on file at

MetLife. It is also undisputed that the Policy is governed by ERISA.

      Turning then to the Ohio wrongful conversion claim, the Estate cannot satisfy the first

two elements. Each of these two elements will be addressed in seriatim.

**1. Plaintiffs' Entitlement**

      To be successful on their conversion claim, the Estate must first show that it has a right to

the Proceeds from the Policy. To show entitlement to the Proceeds, the Estate first argues that,

pursuant to Ohio Rev. Code §1339.63(B)(1), when Kmatz and Gaines obtained a dissolution of

their marriage on July 27, 2000, Gaines's designation as the beneficiary on the Policy became

void.

      Regarding the application of Ohio law to determine the rightful beneficiary, the United

States Supreme Court has held that plan documents and not state law are used to determine the

proper beneficiary of an ERISA plan. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148-49

(2001)(Washington statute providing for automatic revocation, upon divorce, of any designation

of spouse as beneficiary of non probate assets is preempted by ERISA). Further, Federal courts

applying the holding in *Egelhoff* to Ohio law have determined that Ohio Rev. Code

§1339.63(B)(1) is preempted by ERISA and that benefits from plans governed by ERISA are to

be paid in accordance with the plan documents. *Dunson-Taylor v. Metropolitan Life Insurance

Co.*, 164 F.Supp.2d 988, 994 (S.D.Ohio 2001).

An exception to the preemption of state law by ERISA occurs when the state judgment of

divorce constitutes a Qualified Domestic Relations Order ("QDRO"). *LeTourneau v. General

Motors Corporation*, 24 Fed.Appx. 332, 2001 WL 1450672 at **2 (6th Cir. Nov. 9, 2001);

*Metropolitan Life Insurance Co. v . Mulligan*, 210 F.Supp.2d 894, 897 (E.D.Mich 2002).

However, the state judgment of divorce in this case does not satisfy the ERISA requirements for

a QDRO nor do either of the Parties to this Motion argue that it does. Therefore, Ohio Rev. Code

§1339.63(B)(1) is preempted by ERISA and is not applicable to a determination of the rightful

beneficiary of the Policy.

The Estate next argues that it is entitled to the Proceeds because Kmatz substantially

complied with all acts necessary to remove Gaines as the beneficiary of the Policy. It is in

support of this argument that the Estate presents several pages of alleged facts regarding Kmatz's

substantial compliance with the requirements to change the beneficiary from Gaines to Joseph E.

Kmatz, Kmatz's father.

However, the alleged facts presented by the Estate regarding substantial compliance are

irrelevant. As established hereinbefore, the Sixth Circuit has specifically rejected the Federal

common law "substantial compliance" test and has consistently and repeatedly held that the

determination as to who is the proper beneficiary of an ERISA-governed plan is based upon the

plan documents. *Unicare*, 157 Fed.Appx. 787, 2005 WL 2323160 at **1; *Hendon*, 145 F.3d

1331, 1998 WL 199824 at **6; *Pressley*, 82 F.3d at 130; *contra, Weatherford*, 924 F.2d 1057.[6]

Therefore, the "substantial compliance" test does not apply and the decision as to who is

the beneficiary of the Policy is based upon the plan documents. The plan documents, specifically

the beneficiary designation form on file at MetLife, indicate that Gaines is the beneficiary.

**2. Wrongful Act Or Disposition**

The second element of an Ohio conversion claim is the defendant's conversion by a

wrongful act or disposition. In this case, the Estate has not shown that Gaines's acceptance of the

Proceeds was a wrongful act or disposition. According to the plan documents and Sixth Circuit

law, Gaines is entitled to the Proceeds.

**3. Constructive Trust**

The Estate's final argument is that the Court should impose a constructive trust ordering

Gaines to turn over the Proceeds of the Policy to the Court until such time as the Court

determines who is the rightful beneficiary.[7] Once the benefits of an ERISA plan have been

distributed, as is the case here, ERISA does not preempt the imposition of a constructive trust on

those benefits. *Mulligan*, 210 F.Supp.2d at 899(citing *Central States, Southeast & Southwest

Areas Pension Fund v. Howell*, 227 F.3d 672, 678-79 (6th Cir. 2000)). However, in Ohio, a

constructive trust is an appropriate remedy for unjust enrichment. *Dinunzio v. Murray*, Case No.

2003-L-213, 2005 WL 1861966 at * 4 (Ohio Ct. App. Aug. 5, 2005). Therefore, this remedy will

be considered along with Plaintiffs' unjust enrichment claim.

---

[6]Previously distinguished, see footnote 4.

[7]The Estate's Complaint does not seek the imposition of a constructive trust but its briefing papers do.

**4. Conclusion Regarding the Estate's Conversion Claim**

Pursuant to Sixth Circuit law, the beneficiary form on file at MetLife governs who is the beneficiary of the Policy and it is undisputed that the form indicates that Gaines is the beneficiary. As a result, Gaines is entitled to the Proceeds of the Policy and the Estate has not shown its ownership or right to possession of the property at the time of the alleged conversion, the first element of an Ohio conversion claim. The Estate also has not shown that Gaines's acceptance of the Policy Proceeds was a wrongful act, the second element of an Ohio conversion claim. Therefore, there are no genuine issues of material fact and Gaines is entitled to judgment as a matter of law on the Estate's conversion claim. The analysis turns next to the Estate's unjust enrichment claim.

**C. Analysis of the Estate's Unjust Enrichment Claim**

The Estate's Fifth Cause of Action is against Gaines for unjust enrichment. Specifically, the Estate alleges that Gaines was unjustly enriched to its detriment because Gaines received the Proceeds of the Policy.

Unjust enrichment occurs under Ohio law when a person has passively received a benefit which it would be unconscionable for the person to retain. *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 861 (6th Cir. 2002)(citing *Cosby v. Cosby*, 750 N.E.2d 1207, 1213 (Ohio Ct. App. 2001)). The elements that must be proved to sustain an unjust enrichment claim in Ohio are: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so. *Id.* at 860 (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

The Estate in this case cannot satisfy at least two of these three elements. These two elements will be addressed.

**1. Benefit Conferred By Plaintiff Upon Defendant**

The benefit at issue in this case is the Policy Proceeds. Regarding the first element of an Ohio unjust enrichment claim, this benefit was not conferred by the Estate, who is the plaintiff here, it was conferred by Kmatz through his designation of Gaines as the beneficiary. Although the Estate claims that it is entitled to this benefit, as determined above, it is not. In accordance with Sixth Circuit law, the Proceeds of the Policy were paid to Gaines because she was the beneficiary identified in the plan documents, specifically the beneficiary designation form on file at MetLife. Therefore, the Estate cannot show that it conferred a benefit upon Gaines.

**2. Retention of the Benefit When Unjust To Do So**

To satisfy an Ohio unjust enrichment claim, the Estate must also show that Gaines retained a benefit, presumably the Proceeds of the Policy, under circumstances where it would be unjust to do so. However, as indicated above, Gaines is entitled to this benefit. Therefore, it would not be unjust for her to retain this benefit.

**3. Constructive Trust**

In addition to the unjust enrichment claim, the Estate asks the Court to impose a constructive trust ordering Gaines to turn over the Policy Proceeds to the Court until such time as the Court determines who is the rightful beneficiary. As indicated above, a constructive trust is an appropriate remedy against unjust enrichment. *Dinunzio*, 2005 WL 1861966 at *4 (a constructive trust is imposed where a person holding title to property is subject to an equitable

duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it).

However, in this case, the Estate has not shown that Gaines has been unjustly enriched by receipt of the Proceeds. Therefore, the Court need not establish a constructive trust.

**4. Conclusion Regarding the Estate's Unjust Enrichment Claim**

Pursuant to Sixth Circuit law, the beneficiary form on file at MetLife governs who is the beneficiary of the Policy and it is undisputed that this form indicates that Gaines is the beneficiary. Therefore, Gaines is entitled to the Proceeds of the Policy. As a result, the Estate has not presented evidence that satisfies two of the three elements of an Ohio unjust enrichment claim. Therefore, there are no genuine issues of material fact and Gaines is entitled to judgment as a matter of law on the Estate's unjust enrichment claim.

## IV. SUMMARY

There is no legally supportable reason to consider evidence outside the SAR. Based upon the evidence in the SAR, the decision to provide the Policy Proceeds to Gaines was not arbitrary or capricious. Therefore, Gaines is entitled to the Policy Proceeds.

ABX, Airborne and MetLife did not violate their ERISA-imposed fiduciary duties with regard to the Plan or the Policy. In addition, the Estate is not entitled to the damages that it seeks for an alleged failure to comply with ERISA's notice and procedural requirements.

As a result, ABX, Airborne and MetLife's Motion for Judgment on the Administrative Record with regard to the Estate's claims against them is GRANTED. Further, the Estate's Motion for Summary Judgement against ABX, Airborne and MetLife is OVERRULED.

Finally, there are no genuine issues of material fact and Gaines is entitled to judgment as a matter of law on Plaintiffs' Fourth Cause of Action for conversion and Plaintiffs' Fifth Cause of Action for unjust enrichment. Gaines's Motion for Summary Judgment is, therefore, GRANTED and Gaines is dismissed as a Defendant in this matter.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Fourth day of May, 2006.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-28-